UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEATRICE D. A., | Case No. CV 22-01207-RAO |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | |
| Defendant. | |

I. **INTRODUCTION**

Plaintiff Beatrice D. A.[1] ("Plaintiff") challenges the Commissioner's denial of her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, and supplemental security income ("SSI") under Title XVI of the Social Security Act. For the reasons stated below, the decision of the Commissioner is AFFIRMED.

///

///

---

[1] Plaintiff's name is partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

## II. SUMMARY OF PROCEEDINGS

On September 18 and 26, 2018, respectively, Plaintiff filed an application for DIB and an application for SSI, alleging that she had been disabled since June 11, 2016, due to lupus, joint pain, fatigue, fibromyalgia, asthma, constant diarrhea, lower back pain, sciatic nerve pain, anxiety, and depression. (Administrative Record ("AR") 15, 237-47, 278.) Her claim was denied initially on March 6, 2019, and upon reconsideration on July 16, 2019. (AR 15, 85-144.) On September 9, 2019, Plaintiff filed a written request for hearing, and a telephonic hearing was held on June 17, 2020.[2] (AR 36-84, 162-63.) Plaintiff, represented by counsel, appeared and testified, along with an impartial vocational expert ("VE"). (AR 36-84.) On March 31, 2021, the ALJ found that Plaintiff had not been under a disability from June 11, 2016, through the date of the decision.[3] (AR 30.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (AR 1-6.) Plaintiff filed this action on February 22, 2022. (Dkt. No. 1.)

To determine whether Plaintiff was disabled under the Social Security Act, the ALJ followed a five-step sequential evaluation process. *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 11, 2016. (AR 18.) At **step two**, the ALJ found that Plaintiff has the severe impairments of systemic lupus erythematosus, cervical stenosis with radiculopathy, degenerative changes of the lumbar and thoracic spine, asthma, rheumatoid arthritis, fibromyalgia, obesity, dysthymia, and depression. (*Id*.) At **step three**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled

---

[2] The hearing was telephonic due to the COVID-19 pandemic. (AR 38.)

[3] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A).

2

the severity of a listed impairment in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, or 416.926. (AR 19.)

Before proceeding to step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work, except she can occasionally climb ramps and stairs, but never climb ladders, ropes and/or scaffolds; can occasionally balance, stoop, kneel, crouch and crawl; should avoid concentrated exposure to extreme cold, fumes, odors, dusts, gases and poor ventilation; cannot work with hazardous machinery or around unprotected heights; can maintain attention and concentration to perform simple, routine and repetitive tasks; and can work in an environment with occasional changes to the work setting and occasional work-related decision making. (AR 22.) At **step four**, the ALJ found that Plaintiff is unable to perform any past relevant work. (AR 28.) At **step five**, the ALJ found that considering Plaintiff's age, education, work experience, RFC, and the VE's testimony, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (AR 29). Accordingly, the ALJ found that Plaintiff "has not been under a disability . . . from June 11, 2016, through the date of this decision." (AR 30.)

### III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. A court must affirm an ALJ's findings of fact if they are supported by substantial evidence, and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). "Substantial evidence . . . is 'more than a mere scintilla[,]' . . . [which] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, —U.S. —, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citations omitted); *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his

interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotations omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see also Robbins v. Social Sec. Admin.,* 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart,* 340 F.3d 871, 874 (9th Cir. 2003)).

## IV. DISCUSSION

Plaintiff contends that the ALJ (1) erred in determining that Plaintiff does not need a cane and/or walker in the workplace; (2) failed to provide specific, clear, and convincing reasons for discounting Plaintiff's need for a cane or walker and failed to consider whether Plaintiff's condition worsened; (3) failed to pose a complete hypothetical question to the VE; and (4) erred at step five. (Joint Submission ("JS") at 2-3.) For the reasons below, the Court affirms.

### A. The ALJ Did Not Err in Determining That Plaintiff Does Not Need a Cane or Walker in the Workplace

Plaintiff argues that the ALJ applied a "stricter burden of persuasion" when assessing her need for a cane or a walker, and remand is appropriate because the evidence shows that Plaintiff "would more likely than not need to utilize a cane

and/or walker for ambulation." (JS at 3-5.) The Commissioner argues that the record does not support the use of a cane or a walker, and as such, the need for a cane or a walker was properly omitted from the RFC. (JS 5-7.)

### 1. Applicable Legal Standards

A claimant's RFC is what one can "still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1)-(2), 416.945(a)(1)-(2). The ALJ is responsible for assessing a claimant's RFC "based on all of the relevant medical and other evidence." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see Robbins*, 466 F.3d at 883 (citing Soc. Sec. Ruling ("SSR") 96-8p (July 2, 1996), 1996 WL 374184, at *5 (July 2, 1996)). The RFC assessment must contain "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *See* SSR 96-8p. An ALJ's determination of a claimant's RFC must be affirmed "if the ALJ applied the proper legal standard and his decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *accord Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

### 2. The ALJ's Decision

The ALJ found, in pertinent part, that Plaintiff could perform a range of light work, including occasionally climbing ramps and stairs, and occasionally balancing, stooping, kneeling, crouching, and crawling. (AR 22.) The ALJ considered Plaintiff's use of a cane and walker, but did not include either in the RFC.

The ALJ noted that Plaintiff testified in June 2020 that her legs started to feel like Jell-O around 2013 and she was told that she had broken cartilage, bulging discs and osteoarthritis that was pinching her nerves. (AR 23, 55.) Plaintiff explained that she walked with a cane and a walker, and she felt like she had to "sit, stand, sit, stand, lay." (AR 23, 55.) She started walking more, but she still has pain in her back that radiates into her lower extremities all the way down to her feet. (AR 23, 55.) She takes ibuprofen and a muscle relaxer for her back, but has not had any other

treatment. (AR 23, 48.) Plaintiff estimated that she could stand for up to five minutes and needs to lay down for about half of the day. (AR 23, 66-67.) The ALJ also noted that Plaintiff uses a cane and a walker for ambulation, but uses the cane when she goes out because she is too embarrassed to use the walker in public. (AR 23.) She is able to drive, but only drives when necessary. (AR 23, 65.) The ALJ found that Plaintiff had not established the medical necessity for the use of a cane or walker. (AR 24.)

### 3. Discussion

Plaintiff first argues that the ALJ applied the incorrect legal standard and required Plaintiff to support her need for a cane and/or walker with "all of the medical evidence." (JS at 5.) The basis for Plaintiff's argument appears to be the ALJ's statement that "the extent of the claimant's alleged limitations are not entirely consistent with the medical evidence." (JS at 3.) The Court declines to read the ALJ's "not entirely consistent" statement as requiring Plaintiff to support her need for a cane or walker with all of the medical evidence or requiring more than a preponderance of the evidence. The ALJ cited the relevant the medical evidence, taking care to describe how the evidence supported his conclusion that the medical necessity for the use of a cane or walker was not established. (AR 24-25.) The ALJ cited Plaintiff's conservative treatment, her partial compliance with her treatment plan, her physical examination findings, her rejection of cortisone/trigger point injections, and her inconsistent use of a cane. (AR 24-25.) The Court finds that the ALJ did not use the incorrect legal standard.

Plaintiff next argues that the record evidence supports her need for a cane and/or walker. (JS at 4-5.) She cites her severe impairments, including her obesity; physical examination findings of diffuse arthralgias and tenderness in the lower extremities and minimal restricted range of motion in the knees; ambulation with a cane in 2019 and 2020; a limping gait in December 2019; and body aches and weakness in January 2020. (JS 4-5.)

The use of a hand-held assistive device such as a cane is a functional limitation only if it is medically required. *See* SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996); *Quintero v. Colvin*, 2014 WL 4968269, at *10 (E.D. Cal. Sept. 29, 2014) ("The use of a cane or other 'hand-held assistive device' is probative of a claimant's functional limitations only if it is medically required."). "To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9p.

Plaintiff's argument is focused solely on the first element of need. She argues that her impairments in combination with her morbid obesity show that she would "more likely than not need to utilize a cane and/or walker for ambulation." (JS at 5.) Specifically, she points to treatment notes indicating diffuse arthralgias and tenderness, pain, decreased range of motion, and joint crepitation in the lower extremities; hip pain and lower back pain; a limping gait; and ambulation with a cane and pending a walker with a seat. (JS at 5; AR 375, 377, 382, 395-97, 408, 430, 446, 452-55, 621, 623, 701-04, 762, 764-66, 812-13.) The Court notes that the record also contains Plaintiff's testimony that she used a cane or walker, although as the ALJ found, it is unclear from the treatment notes whether Plaintiff consistently used either, given that her specialists made no note of a cane or walker and recommended regular exercise at least 30 minutes a day, five to six days per week. (AR 25, 66-70, 628, 668.) Plaintiff also testified that the walker was prescribed by her primary physician in 2019, and she bought the cane without a prescription. (AR 68-69.) In any event, Plaintiff's own testimony and mere references in treatment notes to her use of an assistive device are not enough to show medical need. *See Schluter v. Berryhill,* 2020 WL 1557773, at *5 (D. Ariz. Mar. 10, 2020) ("[A] plaintiff's testimony regarding necessity or a physician's mere observation of the use of a cane is insufficient to

Case 2:22-cv-01207-RAO Document 22 Filed 04/19/23 Page 8 of 20 Page ID #:897

establish a medical necessity.") (citing *Marin v. Astrue*, 2012 WL 5381374, at *4 (C.D. Cal. Oct. 31, 2012) (finding ALJ "justifiably concluded that plaintiff's use of a cane did not warrant a more limited RFC" where only plaintiff's own testimony corroborated her use of a cane), *report and recommendation adopted by* 2020 WL 1552839 (D. Ariz. Apr. 1, 2020); *Flores v. Colvin*, 2016 WL 2743228, at *14 (E.D. Cal. May 11, 2016) (medical need for a cane not shown where references to cane came from plaintiff's self-reports and medical source's observations); *Cashin v. Astrue*, 2010 WL 749884, at *11 (C.D. Cal. Feb. 24, 2010) (finding physician's observation of plaintiff's use of cane was not "an objective finding that plaintiff's cane was medically required").

Further, as the ALJ found, Plaintiff's need for a cane or walker was contradicted by her noncompliance with her medication, conservative treatment, inconsistent use of an assistive device, and unchanged 5/5 motor strength with normal sensation in December 2019 and January 2020, when she was noted to use a cane with a limping gait. (AR 25.) Plaintiff has not established medical need for a cane or walker.

Even assuming Plaintiff could show the requisite need, the record is devoid of the required medical documentation describing the specific circumstance in which she needs a cane or walker, and none of the evidence cited by Plaintiff addresses this requirement. *See Dean N. v. Saul*, 2020 WL 430962, at *2 (C.D. Cal. Jan. 28, 2020) ("Plaintiff was required to establish both need and the specific circumstance in which he needs the cane before the ALJ could include the usage of a cane in his RFC."). For example, while the record indicates that a walker was prescribed in 2019, around the time when Plaintiff was hospitalized for a lupus flare after she had run out of medications for a month and had not seen her rheumatologist for seven months, the record contains no explanatory information describing when the walker was needed, the duration, distance, terrain, or any other relevant information. (AR 68, 707-08.) *See Downyell, J. v. Kijakazi*, 2022 WL 971335, at *4 (C.D. Cal. Mar. 31, 2022)

(finding walker not medically required where record contained one reference to a walker prescription but no explanation of the circumstances in which the walker was needed); *see also Tripp v. Astrue*, 489 F. App'x 951, 955 (7th Cir. 2012) (following the Third and Tenth Circuits in requiring an "unambiguous opinion from a physician stating the circumstances in which an assistive device is medically necessary"). Indeed, this void is consistent with Plaintiff's testimony that her prescribing doctor did not tell her why she needed a walker, and "[i]t varie[d]" whether her doctors recommended that she either use or not use the walker. (AR 68-69.) Because Plaintiff did not establish both need and the specific circumstance for the use of a cane or walker, the ALJ could not include either assistive device in the RFC.

In sum, because the record evidence does not demonstrate that a cane or walker was medically necessary, the ALJ did not err by not providing for use of a cane or walker in the RFC. Accordingly, remand is not warranted on this issue.

### B. The ALJ Provided Specific, Clear, and Convincing Reasons for Discounting Plaintiff's Testimony Regarding Her Need for a Cane or Walker and Properly Considered Whether There was a Worsening in Plaintiff's Condition

Plaintiff argues that the ALJ did not provide specific, clear and convincing reasons for rejecting Plaintiff's need for a cane or walker to ambulate; and the ALJ erred in reaching a single RFC determination because her ability to ambulate worsened in 2019 and 2020. (JS at 8-11.) The Commissioner argues that the ALJ properly found that Plaintiff did not require a cane or walker, and the RFC is supported by substantial evidence. (JS at 11-12.)

#### 1. Applicable Legal Standards

Where, as here, the claimant has presented evidence of an underlying impairment and the ALJ did not make a finding of malingering (*see* AR 23-24), the ALJ must "evaluate the intensity and persistence of [the] individual's symptoms . . . and determine the extent to which [those] symptoms limit [his or her] . . . ability to

perform work-related activities." SSR 16-3p, 2017 WL 5180304, at *4. In assessing the intensity and persistence of symptoms, the ALJ "examine[s] the entire case record, including the objective medical evidence; an individual's statements . . . ; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id*. at *4. The ALJ must provide "specific, clear and convincing reasons" for rejecting the claimant's statements. *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (citations and internal quotation marks omitted); *see also Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). The ALJ must identify what testimony was found not credible and explain what evidence undermines that testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). "General findings are insufficient." *Lester*, 81 F.3d at 834.

### 2. Discussion

As discussed above, the ALJ did not err by not providing for use of a cane or walker in the RFC because medical necessity was not established. Plaintiff's argument that the ALJ did not provide sufficient reasons for rejecting her testimony that she needed a cane or walker for ambulation does not merit a different result. (JS at 10.)

Contrary to Plaintiff's argument, the ALJ did not merely state that Plaintiff's alleged limitations were not entirely consistent with the medical evidence. Rather, the ALJ identified at least four reasons for discounting Plaintiff's testimony regarding her need for a cane or walker as inconsistent with the record. The ALJ considered (1) Plaintiff's condition was stable with conservative treatment; (2) Plaintiff's failure to comply with her treatment plan; (3) Plaintiff's inconsistent use of a cane or walker; and (4) Plaintiff's generally normal physical examinations of her back, joints and extremities. (AR 24-25.) Generally speaking, these are valid reasons for discounting a claimant's testimony. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's

10

testimony regarding severity of an impairment."); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039-40 (9th Cir. 2008) (explaining ALJ may consider fact that claimant failed to follow a course of treatment in making adverse credibility determination); *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (ALJ may use inconsistencies between a claimant's testimony and his or her other statements, conduct, and daily activities as a basis for discounting his or her testimony); *Burch*, 400 F.3d at 681 (lack of supporting objective medical evidence cannot form the sole basis for discounting testimony, but is a factor the ALJ may consider in making a credibility determination).

The ALJ made specific findings with respect to the evidence. The ALJ found, *inter alia*, that in July 2019, Plaintiff reported pain all over her body with weakness, she was approved for Home Health Care, and was ambulating with a cane, but she was off her medication for two months and in August 2019, she asked her primary care doctor for a walker with a seat. (AR 25, 707, 759, 764-65.) Plaintiff continued to decline cortisone/trigger point injections, she continued on prednisone, and while it was noted that she was ambulating with a cane and awaiting a walker with a seat, it was unclear if her rheumatologist knew about either device. (AR 25, 698, 702, 664, 668, 702, 704, 719, 732.) Plaintiff's rheumatology examinations also remained the same, and in December 2019 and January 2020, she was using a cane and had a limping gait, but she also had 5/5 motor strength with normal sensation. (AR 25, 701, 766, 811-12.)

The ALJ drew reasonable inferences from the record that Plaintiff's use of a cane or walker was not a medical necessity and did not need to be included in the RFC. The record reflects, in part, that Plaintiff fell in April 2016, but she was able to walk with no numbness or tingling or clubbing, cyanosis, edema or deformity in her extremities, and she had full range of motion of all joints. (AR 395-96.) She reported in September and October 2017 that she walked on a treadmill three times a week. (AR 380, 383.) A September 2018 examination indicates nontender,

nondeformed, musculoskeletal extremities with no clubbing, cyanosis or edema; back without midline tenderness; normal gait; motor 5/5 in all extremities; and sensory intact to soft touch in all extremities. (AR 599.) Plaintiff was noted to be ambulating with a cane in November 2018, when she complained of lower back pain and bilateral leg weakness. (AR 649.) At a July 2019 rheumatology appointment in which a cane is not mentioned, it was noted that Plaintiff had not been seen since December 2018 and she had been off her medication for two months, yet no paraspinal muscle spasms were found in the lower back, ankles had good range of motion with no swelling or tenderness, and both knee joints had minimal tenderness and minimal restricted range of motion. (AR 707-08.) At an August 2019 cardiovascular examination in which a cane is not mentioned, Plaintiff had meralgia paresthetica, bilateral lower limbs, but regular exercise of at least 30 minutes, five to six days per week was recommended.[4] (AR 731-32.) An August 2019 x-ray of the lumbar spine indicated moderate degenerative changes of the spine. (AR 702.) At rheumatology examinations in August and November 2019 in which a cane is not mentioned, no paraspinal muscle spasms were found in the lower back, ankles had good range of motion with no swelling or tenderness, both knee joints had minimal tenderness and minimal restricted range of motion, and Plaintiff declined cortisone/trigger point injections. (AR 701-05.) At a December 2019 neurological examination, Plaintiff was noted to have a limping gait with a cane for ambulation, but her extremities showed no clubbing, cyanosis or edema, 5/5 muscle strength, normal muscle tone and bulk, and no involuntary movements. (AR 812.) Plaintiff's primary care doctor noted that Plaintiff ambulated with a cane in treatment notes in July 2019, August 2019, and January 2020, but as Plaintiff testified, the cane was not prescribed. (AR 68-69, 764-66.) The ALJ's interpretation of the evidence is rational

---

[4] At the hearing, Plaintiff testified that she does not remember if she told her cardiologist if she had a walker and that she "probably used the cane" when she went to her appointments. (AR 70.)

Case 2:22-cv-01207-RAO   Document 22   Filed 04/19/23   Page 13 of 20   Page ID #:902

and should be upheld. *See Burch*, 400 F.3d at 679.

With respect to Plaintiff's argument that the ALJ erred in reaching a single RFC determination because her ability to ambulate worsened in 2019 and 2020, her argument is rejected. Plaintiff relies on *Smith v. Kijakazi*, 14 F.4th 1108, 1116 (9th Cir. 2021), and argues that "there should have been an RFC to accommodate limitations for [her] worsening condition" because she had no gait problem in 2018, but did have a gait problem in 2019 into 2020 and was using a cane to ambulate. (JS at 11; AR 417, 449, 453, 551, 554, 599, 628, 766, 812.) As discussed above, because Plaintiff failed to establish medical necessity for a cane or walker, the ALJ could not include either assistive device in the RFC. Unlike in *Smith*, where the ALJ discredited evidence from early in the disability period on the basis of inconsistencies applicable to only the late-period testimony, here, the ALJ considered whether there was a medical necessity for a cane or walker throughout the relevant time period, including 2019 and 2020. (AR 24-25.) The ALJ noted that Plaintiff had a limping gait, ambulated with a cane, and was awaiting a walker with a seat in 2019 and 2020, but throughout this time, she was not consistent with the use of a cane or walker and her examinations remained stable with conservative treatment. (AR 25, 698, 701-02, 707, 764-66, 811-12.)

In sum, the ALJ provided specific, clear, and convincing reasons for discrediting Plaintiff's testimony regarding her need for a cane or walker for ambulation, and the ALJ properly considered whether there was a worsening in Plaintiff's condition. Accordingly, remand is not warranted on this issue.

### C. The ALJ Posed a Complete Hypothetical

Plaintiff contends that the ALJ posed an incomplete hypothetical to the VE because he did not include a limitation regarding Plaintiff's use of a cane or walker. (JS at 12.) The Commissioner argues that the hypothetical included all the limitations in the RFC that were supported by the record. (JS at 13-14.)

///

### 1. Applicable Legal Standards

A hypothetical posed to a vocational expert must "contain[] all of the limitations that the ALJ found credible and supported by substantial evidence in the record." *Bayliss*, 427 F.3d at 1217. "If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (citation and quotation marks omitted).

### 2. Discussion

The ALJ did not err by not including in the hypothetical a limitation regarding the use of a cane or walker. As discussed above, the ALJ's RFC determination, which did not include the use of a cane or walker, is supported by substantial evidence. By posing a hypothetical with limitations supported by substantial evidence, the hypothetical was complete. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008) (finding that, because the ALJ's RFC assessment was proper and complete, the ALJ's hypothetical based on the RFC was also proper and complete); *see also Osenbrock v. Apfel*, 240 F.3d 1157, 1164 (9th Cir. 2001) (finding that an ALJ did not err in failing to include alleged impairments in a hypothetical when the claimant failed to present evidence to support those impairments). The hypothetical contained all the limitations that were supported by the record, and the ALJ properly relied on the VE's testimony. *See Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989) (hypothetical questions posed to a vocational expert need not include all alleged limitations, but rather only those limitations the ALJ finds to exist).

Accordingly, remand is not warranted on this issue.

### D. **Substantial Evidence Supports The ALJ's Step Five Finding**

Plaintiff contends there is a conflict and insufficient job numbers at step five. (JS at 14-19.) Specifically, she argues that she cannot perform the jobs of assembler of small products and inspector and hand packager, and there is not a significant

number of jobs in the national economy for the remaining job of assembler of electrical accessories. (JS at 14-19, 22.) The Commissioner argues lack of apparent conflict, forfeiture, and sufficient job numbers. (JS at 19-22.)

### 1. Applicable Legal Standards

At step five of the sequential disability analysis, it is the Commissioner's burden to establish that, considering the claimant's residual functional capacity, the claimant can perform other work. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014) (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). To make this showing, the ALJ may rely on the testimony of a VE. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). The ALJ may pose accurate and detailed hypothetical questions to the VE to establish (1) what jobs, if any, the claimant can do; and (2) the availability of those jobs in the national economy. *Garrison*, 759 F.3d at 1011. The VE then translates the ALJ's scenarios into "realistic job market probabilities" by testifying about what kinds of jobs the claimant can still perform and whether there is a sufficient number of those jobs available in the economy. *Id.* (quoting *Tackett*, 180 F.3d at 1101). The burden of establishing that other work exists in "significant numbers," lies with the Commissioner. *Beltran v. Astrue*, 700 F.3d 386, 389-90 (9th Cir. 2012); *Tackett*, 180 F.3d at 1099. "[I]n the absence of any contrary evidence, a VE's testimony is one type of job information that is regarded as inherently reliable; thus, there is no need for an ALJ to assess its reliability." *Buck v. Berryhill*, 869 F.3d 1040, 1051 (9th Cir. 2017).

### 2. The ALJ's Decision

At step five, the VE testified that an individual with Plaintiff's age, education, work experience, and RFC would be able to perform the requirements of representative occupations such as assembler of electrical accessories, assembler of small products, and inspector and hand packager. (AR 81.) The ALJ determined that the VE's testimony was consistent with the information contained in the DOT. (AR 29.) Adopting the VE's testimony, the ALJ found that there are jobs that exist in

significant numbers in the national economy that Plaintiff could perform, and Plaintiff was, therefore, not disabled. (AR 29.)

### 3. Discussion

#### a. Hazardous machinery and occasional changes to the work setting

Plaintiff contends that she is unable to perform the assembler of small products job and the inspector and hand packager job because each requires her to perform work that conflicts with her RFC. With respect to the assembler of small products job, she argues she cannot perform that job because it would require her to work with hazardous machinery and may require more than occasional changes to the work setting. (JS at 15.) She argues that it would require her to use portable power tools or perform light metal-cutting on an assembly line, which she interprets as "working with hazardous machinery." (JS at 16.) She also argues that this job may require her to be assigned to different workstations or shift from one station to another, which she interprets as "may" require more than "occasional changes to the work setting." (JS at 16.)

With respect to the inspector and hand packager job, she argues that she cannot perform this job because she is limited to jobs with only "occasional work-related decision making." (JS at 17.) She argues that this job would require her to visually examine molded products for defects and discard defective products, which in her view, would require constant decision-making. (JS at 17.)

As to both the assembler of small products job and the inspector and hand packager job, the Commissioner argues that Plaintiff failed to raise the issue of a conflict at the hearing, and in any event, Plaintiff's lay interpretation of the DOT requirements do not supplant the VE's testimony. (JS at 19-20.)

Here, Plaintiff's counsel declined to cross-examine the VE and thus did not question the VE regarding apparent conflicts. (AR 81.) The Court agrees with the Commissioner that Plaintiff failed to raise the issue of a conflict at the hearing.

Regardless, Plaintiff's argument fails on the merits.

The Court finds that the ALJ was entitled to rely on the VE's testimony. The VE testified that a person with Plaintiff's RFC could perform the assembler of small products job and the inspector and hand packager job. (AR 81.) Plaintiff's lay interpretation otherwise does not trump the expertise of the VE. *See Bayliss*, 427 F.3d at 1218 ("An ALJ may take administrative notice of any reliable job information, including information provided by a VE. A VE's recognized expertise provides the necessary foundation for his or her testimony.") Even if Plaintiff had grounded her interpretation of the job requirements in a non-DOT source, which she does not, her argument would not undermine the VE's testimony. *See, e.g., Kevin E. v. Saul*, 2021 WL 134584, at *6 (C.D. Cal. Jan. 14, 2021) (finding lay interpretation of data from non-DOT sources "fails to undermine the reliability of the vocational expert's testimony"). The Court also notes that a DOT's description of a job includes various tasks that may not all be required. *See Gutierrez v. Colvin*, 844 F.3d 804, 807-08 (9th Cir. 2016) (explaining that DOT job descriptions are collective descriptions of numerous jobs). The ALJ appropriately relied on the VE's testimony regarding Plaintiff's ability to perform the assembler of small products job and the inspector and hand packager job.

### b. Job numbers

Plaintiff argues that she cannot perform the job of assembler of electrical accessories because 15,000 jobs is not a significant number of jobs in the national economy. (JS at 18-19) (citing *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 528, 529 (9th Cir. 2014) ("Under our current case law, the ALJ's finding that 25,000 national jobs is sufficient presents a close call.")). The Commissioner argues that Plaintiff waived a challenge to the job numbers by not challenging the testimony at the hearing, and in any event, a significant number of jobs exists in the national economy. (JS at 20-21.)

///

Here, Plaintiff was represented by counsel at the hearing, and counsel did not cross-examine the VE. (AR 81.) The Commissioner argues that Plaintiff "did not challenge the jobs during the hearing] [so] [a]ny such latter argument should be deemed waived." (JS at 20) (citing *Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017), *as amended,* February 28, 2018 ("When a claimant fails entirely to challenge a vocational expert's job numbers during administrative proceedings before the agency, the claimant forfeits such a challenge on appeal, at least when that claimant is represented by counsel.")). In *Shaibi*, plaintiff argued for the first time on appeal in federal district court that "the VE's job estimates 'deviated from listed sources of administrative notice,'" citing discrepancies between the VE's testimony and job estimates published by the U.S. Census Bureau and the Bureau of Labor Statistics. *Shaibi*, 883 F.3d at 1108. In holding that a claimant must challenge a VE's job numbers during the hearing to preserve the issue on appeal, the Ninth Circuit explained that it was addressing challenges to "the evidentiary basis of a [VE's] job numbers." *Id.* at 1109. The Ninth Circuit relied on the principle outlined in *Meanel v. Apfel*, 172 F.3d 1111 (9th Cir. 1999), *as amended,* June 22, 1999, that the ALJ was in "the optimal position" to resolve any conflict between a claimant's proffered evidence and the evidence relied on by the VE. *Shaibi*, 883 F.3d at 1109.

Here, because Plaintiff is not arguing that the VE's job estimates were unreliable based on evidence relied on by the VE, the Court finds that Plaintiff's argument is not forfeited. Plaintiff's challenge to whether the number of jobs represents a significant number does not require the Court "'to weigh conflicting evidence,' the kind of task best suited to the agency and ALJ." *Maxwell v. Saul*, 971 F.3d 1128, 1130 (9th Cir. 2020) (quoting *Shaibi*, 883 F.3d at 1109). Rather, Plaintiff challenges the ALJ's finding as to whether the number of jobs available is a significant number, not the accuracy of the job numbers themselves. Therefore, Plaintiff did not forfeit the issue. *See id.* (holding plaintiff did not forfeit issue objecting to ALJ's finding that she could perform a significant range of work where

only two occupations were identified, reasoning that to find otherwise would be "task[ing] claimants with objecting to the ALJ's decision before it is written").

No "bright-line rule for what constitutes a 'significant number' of jobs" exists in the Ninth Circuit. *Beltran*, 700 F.3d at 389. As Plaintiff argues, 25,000 national jobs has been found to present a "close call." *Gutierrez*, 740 F.3d at 529. In an unpublished case, the Ninth Circuit stated that it has not found "a similar number" to 12,600 to be significant. *Lemauga v. Berryhill*, 686 F. App'x 420, 422 (9th Cir. 2017). As the Commissioner argues, some district courts within the Ninth Circuit have determined that 14,000 jobs or more are a significant number in the national economy. (JS at 21) (citing, *e.g., Kimberly T. v. Kijakazi*, 2022 WL 910083, at *8 (D. Or. Mar. 29, 2022) (concluding that 15,000 national jobs "constitutes a significant number of jobs"); *Davis v. Comm'r*, 2018 WL 1779341, at *6 (E.D. Cal. Apr. 12, 2018) (finding 15,000 national jobs to be a significant number), *overruled on other grounds*, 846 F. App'x 549 (9th Cir. 2021); *Peck v. Colvin*, 2013 WL 3121280, at *5 (C.D. Cal. June 19, 2013) (concluding that 14,000 is a significant number of jobs); *see also Suarez v. Astrue*, 2012 WL 4848732, at *5 (C.D. Cal. Oct. 11, 2012) (finding 18,000 jobs nationally is not "an enormous number of jobs, [but] it is significant"). On the other hand, at least one district court has found that 15,000 jobs is not a significant number. *See Andrea L. v. Saul*, 2020 WL 888520, at *8 (E.D. Wash. Feb. 4, 2020) (holding 15,000 to 16,000 national jobs was not significant); *see also Madrigal v. Berryhill*, 2017 WL 5633028, at *9 (C.D. Cal. Nov. 21, 2017) (finding 13,300 aggregate jobs in the national economy not a significant number).

Here, the Court need not decide whether 15,000 jobs is a significant number in the national economy. Even assuming that the ALJ erred in finding the job of assembler of electrical accessories exists in significant numbers, the error is harmless because, as discussed above, Plaintiff could still perform the assembler of small

products job and the inspector and hand packager job.[5]

Accordingly, remand is not warranted on this issue.

In sum, after reviewing each of Plaintiff's claims, the Court concludes that the Commissioner's decision should be affirmed.

## V. CONCLUSION

IT IS ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: April 19, 2023

/s/
ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

### NOTICE

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**

---

[5] Plaintiff does not contend that these jobs do not exist in significant numbers in the national economy.